UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ARCANGELO CAPOZZOLO,

        Plaintiff-Appellant,

v.

GROW AMERICA FUND, INC.,

        Defendant-Appellee.

**DECISION AND ORDER**

21-CV-1084S

## I.  INTRODUCTION

In an adversary proceeding before Chief Bankruptcy Judge Carl Bucki, Grow America Fund ("GAF") successfully moved for summary judgment declaring debtor Arcangelo Capozzolo's debt to it nondischargeable. At stake is a nearly $4 million debt that Capozzolo seeks to discharge in bankruptcy. Because the Bankruptcy Court properly found that the debt is nondischargeable, this Court will affirm its decision.

## II.  BACKGROUND

Debtor Arcangelo Capozzolo was the managing member of Buffalo Forklift, LLC, a company he founded in 2008. (Docket Nos. 4-1 at p. 411; 4-2 at p. 63.) Buffalo Forklift engaged in refurbishing and reselling heavy equipment. (Docket No. 4-1 at p. 37.) Pursuant to "remarketing agreements" with its investors, Buffalo Forklift would use investor funds to purchase the equipment. (Id. at pp. 37-38.) According to the remarketing agreements, "upon purchase of each piece of equipment, [Buffalo Forklift] may take title to the Equipment, but shall document in its internal records title in the name of [the investor]. Such title [was to be] evidenced in [Buffalo Forklift's] internal books and records,

1

only." (Id. at p. 38.) The investors would then own either a fractional share of the equipment purchased or 100% of the equipment. (See, e.g., id. at pp. 48-49, 55, 83.) If investors wished to leave the venture, they could either have Buffalo Forklift purchase the equipment they owned or withdraw money from their "dedicated bank accounts." (Id. at p. 40.)

In the period leading up to Capozzolo's application for a loan from GAF, several investors had attempted to exercise their right to exit their agreements with Buffalo Forklift. For example, in February 2017, when investor SNL Equipment Sales, LLC, wished to exit its agreement with Buffalo Forklift, Buffalo Forklift entered an agreement giving it more time to sell SNL's equipment. (See Docket No. 4-1 at pp. 48-54.) Attached to this agreement was an equipment list detailing SNL's ownership interest in 15 pieces of equipment, ranging from 25% to 100% ownership. (Id. at p. 55.) SNL eventually filed a summons and complaint in state court against Buffalo Forklift alleging that Buffalo Forklift had breached an agreement to purchase SNL's interest in equipment upon 90 days' notice. (Id. at pp. 57-64.) The parties stipulated to a dismissal of this case without prejudice on August 22, 2017. (Id. at p. 65.)

On August 25, 2017, Capozzolo commenced an application for a small business administration loan for $4,076,287—to be underwritten by GAF.[1] (Id. at pp. 95-100, 117.) Capozzolo submitted several documents to GAF in support of his application. One such document was a "Balance Sheet as of July 31, 2017." (Id. at pp. 123-26; 4-2 at p. 109.) Under the category "current assets," Capozzolo listed inventory with a value of

---

[1] Capozzolo supplemented this application on November 30, 2017, and December 4, 2017. (Docket No. 4-2 at p. 383.)

$4,641,081. (Id. at p. 123.) In a "Balance Sheet as of September 30, 2017," Capozzolo listed inventory valued at $4,389,684. (Id. at p. 127.) Capozzolo also submitted an inventory list with equipment numbers, years, makes, models, serial numbers, and costs of equipment he asserted was inventory, but with no indication that investors had any interest in these items. (Docket No. 4-2 at p. 110.)

Capozzolo also engaged in email communication with Sheldon Bartel, a GAF loan officer. (See Docket No. 4-1 at pp. 143-54.) In response to Bartels' inquiries, Capozzolo provided a list of equipment owned by Buffalo Forklift listing its total value as $4,389,739.79. (Id. at pp. 134-36.) This list does not indicate that any investors had full or partial ownership of the pieces of equipment. A second list contains the years, makes, models, and prices of equipment, with a total value of $4,504,293.50, but also omits any indication of investor ownership. (Id. at pp. 137-142.)

On September 27, 2017, Bartels visited Capozzolo at Buffalo Forklift's headquarters to assess the company's business operations. (Docket No. 4-2 at pp. 385.) Capozzolo introduced Bartels to employees and gave him a tour of several facilities. (Id.) Throughout Bartels' visit, Capozzolo made multiple verbal representations that he owned the inventory that Buffalo Forklift was refurbishing. (Id.) At no time during the application process did Capozzolo indicate that Buffalo Forklift had a broker or remarketing arrangement for the inventory, or that any other party had any ownership interest in the equipment. (Id. at p. 386.) If GAF had known that neither Capozzolo nor Buffalo Forklift fully owned the inventory, GAF would not have chosen this equipment for collateralization of its loan. (Id.)

Capozzolo asserts that the balance sheets and appraisal he supplied were

3

prepared "in good faith," that he did not "intentionally omit" anything relevant with regards to his application through closing, that he did not manipulate any records to hide material information about the equipment costs, and that he did not intentionally omit the owner-investor column in the inventory list he provided to GAF. (Docket No. 4-3 at p. 10.) He further asserts that "it was not [his] intention to deceive [GAF] with regards to [his] application for a loan to refinance." (Id. at p. 11.) At oral argument, Capozzolo's counsel stated that Capozzolo "inadvertently" omitted the information about the investor-owners of the equipment, but Capozzolo did not assert either a mistake or inadvertence in the affidavit. (See Docket No. 16 at p. 18.)

On November 30, 2017, GAF entered into a loan agreement with Capozzolo and Buffalo Forklift, lending Buffalo Forklift $4,076,287. (Docket No. 4-1 at pp. 225-36.) GAF then filed a UCC statement asserting that the loan was secured by all Buffalo Forklift's assets, including its inventory. (Id. at pp. 263-65.)

Capozzolo and Buffalo Forklift defaulted under the GAF loan around May 1, 2019, and GAF commenced a state court action against them. (Docket No. 4-1, ¶ 14.)

Buffalo Forklift ceased active operations in December 2019. (Docket No. 4-2 at p. 257.) Over the years, Capozzolo had established several different entities: Buffalo Forklift Holdings, LLC, which he founded in 2014; United Lift Equipment, LLC, founded in February or March of 2019; and United Lift Holdings, LLC, founded in December 2019.[2] (Id. at pp. 258-61.) It appears from the record that these entities engaged in the same business as Buffalo Forklift—refurbishing and reselling heavy equipment. Capozzolo

---

[2] After filing for bankruptcy, Capozzolo created another entity, United Lift Holdings d/b/a/ Arcangelo Capozzolo. (Docket No. 4-2 at p. 261.)

4

testified at the Rule 2004 Exam that he had disposed of the equipment he had offered to GAF as collateral and used the proceeds to pay other creditors. (Docket No. 4-2 at pp. 133-135.)

Capozzolo filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code on December 6, 2019. (Docket No. 3-10 at p. 5.) On May 18, 2020, GAF commenced an adversary proceeding seeking to have its loan to Capozzolo declared nondischargeable under 11 U.S.C. §§ 523 (a)(1)(A), (a)(1)(B), and (a)(6). (Docket No. 1 at p. 2.) On February 26, 2021, GAF moved for summary judgment on its complaint. (Docket No. 4-1.) Judge Bucki orally granted GAF's motion on May 14, 2021, finding the debt nondischargeable pursuant to 11 U.S.C. §§ 523 (a)(1)(A) and (a)(1)(B). (Docket No. 16 at pp. 31-35.) Judge Bucki issued a written order on June 10, 2021. (Docket No. 4-5 at pp. 1-2.)

After Judge Bucki issued his order, GAF amended its complaint to include a request for a specified sum, and moved again for summary judgment, which Judge Bucki granted orally on September 9, 2021, followed by a written order on September 17, 2021. (Docket No. 3-16 at pp. 1-3.)

Capozzolo appealed the initial grant of summary judgment on June 24, 2021, but this Court dismissed that appeal because Judge Bucki's ruling was not an appealable final order, given that GAF's amended action for the specified sum was still pending. (See Docket No. 17, 21-CV-757S.) Capozzolo now appeals both the Bankruptcy Court's grant of GAF's motion for summary judgment on the amount of damages and, by implication, its underlying finding that his debt to GAF was nondischargeable. (Docket No. 5.)

### III.  DISCUSSION

Capozzolo argues that the Bankruptcy Court wrongly held that his debt to GAF was nondischargeable pursuant to 11 U.S.C. § 523 (a)(2)(A) and (a)(2)(B).  GAF maintains that Judge Bucki's ruling is correct in all respects.

**A.     Legal Standards**

**1.  Standard of Review**

United States District Courts have jurisdiction to hear appeals from "final judgments, orders, and decrees" of bankruptcy courts. 28 U.S.C. § 158 (a). A district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Sumpter v. DPH Holdings Corp. (In re DPH Holdings Corp.), 468 B.R. 603, 611 (S.D.N.Y. 2012) (quoting former Fed. R. Bankr. P. 8013)). See also W. Milford Shopping Plaza, LLC v. Great Atl. & Pac. Tea Co., Inc. (In re Great Atl. & Pac. Tea Co., Inc.), No. 14-cv-4170 (NSR), 2015 WL 6395967, at *2 n. 1 (S.D.N.Y. Oct. 21, 2015) (noting that, although the Federal Rules of Bankruptcy Procedure were amended to remove Rule 8013, the appellate powers of the District Court with respect to bankruptcy appeals have remained the same)).

The district court must accept a bankruptcy court's findings of fact unless they are clearly erroneous, but it reviews the bankruptcy court's legal conclusions *de novo*. Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006).

**2.  Summary Judgment**

Federal Rule of Civil Procedure 56 applies in adversary proceedings pending in bankruptcy court. McHale v. Boulder Capital (In re 1031 Tax Grp., LLC), 439 B.R. 47, 58 (Bankr. S.D.N.Y.), supplemented, 439 B.R. 78 (Bankr. S.D.N.Y. 2010) (citing Fed. R.

Bankr. P. 7056). A court should grant summary judgment under Rule 56 only where "there is no genuine issue as to any material fact and [ ] the movant is entitled to judgment as a matter of law." Id. (quoting Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (quoting Fed. R. Civ. P. 56 (c) (internal quotation marks omitted)).

Under Federal Rule of Civil Procedure 56 (c), "the district court must consider all 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,' in determining whether there is a genuine issue of material fact." Lavender v. Manheim's Penn. Auction Svcs, Inc. (In re Lavender), 399 F. App'x 649, 651 (2d Cir. 2010) (quoting Davis v. New York, 316 F.3d 93, 100 (2d Cir. 2002) (quoting Fed. R. Civ. P. 56(c)); see also Fed. R. Bankr. P. 7056 (making Fed. R. Civ. P. 56 applicable in adversary proceedings in bankruptcy)).

"Assessments of credibility and choices between conflicting versions of the events are … not [matters] for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996)). But "[a] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Aersale Inc. v. Ibrahim, No. 13 CIV. 713 KBF, 2013 WL 5366384, at *3 (S.D.N.Y. Sept. 25, 2013) (quoting Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010)). "Self-serving, conclusory affidavits, standing alone, are insufficient to create a triable issue of fact and defeat a motion for summary judgment. Id. (quoting BellSouth Telecommc'ns. Inc. v. W.R. Grace & Co.-Conn., 77 F.3d 603, 615 (2d Cir. 1996)).

3. **Nondischargeability of Debts pursuant to 11 U.S.C. § 523 (a)**

The purpose of Chapter 7 bankruptcy is to give an "honest but unfortunate debtor a fresh start." In re O'Brien, 328 B.R. 669, 674 (Bankr. W.D.N.Y. 2005). But certain debts cannot be discharged in bankruptcy. Pursuant to 11 U.S.C. § 523 (a)(2)(B), a debtor will not be discharged from any debt that was obtained by use of a statement in writing "(i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable … reasonably relied; and (iv) that the debtor caused to be made … with intent to deceive." 11 U.S.C. § 523 (a)(2)(B). Similarly, pursuant to 11 U.S.C. § 523 (a)(2)(A), a debtor will not be discharged from a debt that was obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. 11 U.S.C. § 523 (a)(2)(A). A creditor seeking to have a debt declared nondischargeable under § 523 (a)(2)(A) must prove by a preponderance of evidence: (1) that the debtor made a representation; (2) knowing it was false; (3) with the intent to deceive the creditor; (4) upon which the creditor actually and justifiably relied; and (5) that the creditor sustained a loss as a proximate result of its reliance upon the statement. Bank of Am. v. Jarczyk, 268 B.R. 17, 21 (W.D.N.Y. 2001).

The Bankruptcy Court granted summary judgment to GAF under both statutes, finding that GAF had established both Capozzolo's intent to deceive and GAF's reasonable reliance on Capozzolo's statements about his inventory. (Docket No. 16 at p. 34.)

### a. § 526 (a)(2)(B): materially false statement

Capozzolo argues that the Bankruptcy Court erred in granting summary judgment under § 523 (a)(2)(B) because there are issues of fact regarding both his intent in making

statements about collateral for the loan and the reasonableness of GAF's reliance on his statements. This Court finds both arguments unpersuasive.

### i. Intent

"Proving the element of deceptive intent … is often difficult, as [a debtor] will rarely admit to such intent." Hudson Valley Water Res., Inc. v. Boice (In re Boice), 149 B.R. 40, 47 (Bankr. S.D.N.Y. 1992) (citing Management Jets Intl., Inc. v. Mutschler (In re Mutschler), 45 B.R. 482, 491 (Bankr. D.N.D. 1984); Municipal Credit Union v. Brown (In re Brown), 55 B.R. 999, 1004 (Bankr. E.D.N.Y. 1986) ("[I]t is virtually impossible to obtain direct proof of one's intent...."). For this reason, intent to deceive may be established through circumstantial evidence and inferred from the totality of the evidence presented. Voyatzoglou et al. v. Hambley (In re Hambley), 329 B.R. 382, 398–99 (Bankr. E.D.N.Y. 2005) (citing Hong Kong Deposit and Guaranty Ltd. v. Shaheen (In re Shaheen), 111 B.R. 48, 53 (S.D.N.Y. 1990) ("intent to deceive may be inferred when the totality of the circumstances presents a picture of deceptive conduct by the debtor, which indicates that he did intend to deceive and cheat the [creditor]")). Intent can be found where a debtor either made a statement knowing that it was false, or made it with such reckless disregard of the truth so as to be the "equivalent of intent to defraud." In re Boice, 149 B.R. at 47 (citing Town N. Nat'l Bank of Longview, Tx. v. Biedenharn (In re Biedenharn), 30 B.R. 342, 346 (Bankr. W.D. La. 1983)). Fraudulent intent may be inferred from a misstatement of fact which a debtor knows or should know will induce the creditor to act. Strunk v. Wood (In re Wood), 75 B.R. 308, 313 (Bankr. N.D.N.Y. 1987). A debtor's "unsupported assertions of an honest intent will not overcome the natural inferences from admitted facts." In re Boice, 149 B.R. at 47 (citing Collier ¶ 523.10, at 523–71–72).

From the evidence produced by GAF, there is no question of material fact regarding Capozzolo's intent in failing to disclose the investor's ownership interests in the inventory he offered as collateral. Capozzolo acknowledged that he failed to disclose Buffalo Forklift's liabilities to the investors in his application. (Docket No. 4-2 at pp. 323-29.) When GAF officer Bartels visited Capozzolo on September 27, 2017, Capozzolo represented numerous times that the inventory belonged to him. (Docket No. 4-2 at p. 385.) The fact that in February 2017, Capozzolo produced a list of inventory listing the SNL's ownership interest in 15 pieces of equipment ownership demonstrates his knowledge that the list he later gave GAF was incomplete. (Docket No. 4-1 at p. 55.) In sum, Capozzolo caused GAF to believe that Buffalo Forklift owned the inventory he offered as security for the loan, when he knew that he did not. This constitutes persuasive evidence of, at the very least, a reckless disregard of the truth.

In opposition to GAF's motion, Capozzolo offered only an affidavit denying an intent to deceive and asserting that he acted "in good faith." (Docket No. 4-3 at pp. 9-10.) He does not describe the circumstances around his creation of the list, or explain why the list he gave to GAF did not contain the ownership information he provided to his investors. Although his counsel stated at oral argument that any omission was "inadvertent" or a "mistake" (Docket No. 16 at p. 18), Capozzolo's sworn statement notably does not claim inadvertence or mistake, or provide any other factual explanation for his failure to include the investors' partial or full ownership of the inventory. He merely denies the intent to deceive. But "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Aersale, No. 13 CIV. 2013 WL 5366384, at *3 (quoting Hicks v. Baines, 593 F.3d at 166). Capozzolo's

conclusory affidavit does not suffice to create a genuine issue of fact, and summary judgment was proper as to this element. Id.

### ii. Reasonable Reliance

The test for "reasonable reliance" focuses on whether the statement is of such a nature that a reasonably prudent person would rely on it. In re Boice, 149 B.R. at 46. "Examples of unreasonable reliance on a materially false financial statement include situations where the creditor knows or has reason to know that the financial statement is false; where the financial statement is so deficient that it fails to portray a realistic picture of the debtor's financial status; where the creditor's own investigation indicates that the financial statement may be false; or where the creditor, under certain circumstances, failed to verify the information contained in the statement." Id. at p. 47 (internal citations omitted).

Capozzolo argues that GAF did not reasonably rely on his statement regarding the collateral, because it should have discovered the investors' partial ownership on its own. But Capozzolo nowhere states that anyone but he and the investors knew of the investors' ownership of the inventory. He does not convincingly argue GAF could have found it with due diligence or point to where it was publicly available. Further, the investor agreements reveal an intent to keep the investors' ownership interests hidden from public view by recording them only in Buffalo Forklift's internal books. (Docket No. 4-1 at pp. 37-38.) Without any evidence that GAF had reason to know of the falsity of Capozzolo's representations, or that information about the investors' ownership was accessible through the exercise of due diligence, Capozzolo's argument that GAF should have realized that someone other than Buffalo Forklift owned the inventory is mere

11

"metaphysical speculation" that does not suffice to defeat summary judgment.

**b.  § 523 (a)(2)(A): false pretenses, false representation, or fraud.**

The standards for intent and reasonable reliance are the same for § 523 (a)(2)(A) and (a)(2)(B). The Bankruptcy Court granted summary judgment pursuant to § 523 (a)(2)(A) for the same reasons as it did under § 523 (a)(2)(B). (Docket No. 16 at pp. 32-34.)

This Court finds that, considering the numerous representations Capozzolo made as to Buffalo Forklift's ownership of the inventory, GAF established the lack of a question of material fact as to Capozzolo's intent to deceive and as to its reasonable reliance on Capozzolo's assertions. For the same reasons as detailed above, therefore, this Court finds that the Bankruptcy Court did not err in finding Capozzolo's debt nondischargeable pursuant to § 523 (a)(2)(A).

## IV.  CONCLUSION

For all the foregoing reasons, this Court affirms the Order of the Bankruptcy Court.

## V.  ORDERS

IT HEREBY IS ORDERED, that the Order of the Bankruptcy Court, Western District of New York (1:20-1018-CLB, Docket No. 94), is AFFIRMED.

FURTHER, that the Appeal (Docket No. 1) is DENIED and DISMISSED.

FURTHER, that the Clerk of Court is DIRECTED to close this case.

SO ORDERED.

Dated:     September 8, 2022
           Buffalo, New York

                                                     <u>s/William M. Skretny</u>
                                                    WILLIAM M. SKRETNY
                                               United States District Judge